## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 19-70152 |
| SOUTHFRESH AQUACULTURE, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PRE-PETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (II) GRANTING RELATED RELIEF

SouthFresh Aquaculture, LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"),[1] respectfully states the following in support of this Motion (this "Motion"):

### Relief Requested

1.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (i) authorizing the Debtor to (a) continue to operate its cash management system; (b) honor certain pre-petition obligations related thereto; (c) maintain existing business forms in the ordinary course of business; and (ii) granting related relief.

### Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Northern District of Alabama (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama,

---

[1] A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Justin Funk, Chief Financial Officer of SouthFresh Aquaculture, LLC, in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petition for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 28, 2019 (the "Commencement Date"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

dated January 12, 1995. The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004.

## Procedural Background

5.     On the Commencement Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committee has been appointed or designated.

## The Cash Management System

### I.     Overview

6.     In the ordinary course of business, the Debtor seeks to maintain a cash management system (the "Cash Management System") comprising a total of seven active bank accounts, each of which is identified on **Exhibit 1** annexed to **Exhibit A** attached hereto (collectively, the "Bank Accounts"). Four of the Bank Accounts reside at Regions Bank ("Regions"), one account resides at Robertson Banking Company ("Robertson"), one account resides at Merchants and Farmers ("M&F"), and one account resides at CoBank ("CoBank" and,

Case 19-70152-JHH11    Doc 9    Filed 01/28/19    Entered 01/28/19 16:16:26    Desc Main
Document      Page 2 of 23

together with Regions, Robertson, and M&F, the "<u>Cash Management Banks</u>"). As of the Commencement Date, the Debtor has approximately $1,529,855.55 cash on hand available.

7. One of the seven bank accounts is a general operation account for the Debtor's operations.[2] The Debtor has separate accounts for purposes of payroll,[3] petty cash,[4] merchant services,[5] and Feed Mill revenue.[6] Finally, the Debtor has an account that will remain open to fund outstanding checks issued by the Debtor pre-petition in the ordinary course of business.[7]

8. The Cash Management System is comparable to the cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner. The Debtor uses the Cash Management System in the ordinary course of its business to collect, transfer, and disburse funds generated from its operations and to facilitate cash monitoring, forecasting, and reporting. Additionally, in the ordinary course of business, the Debtor conducts transactions using debit, wire, and ACH payments. The Debtor's chief financial officer, Justin Funk (the "<u>CFO</u>"), and accounting/treasury department maintain daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds. Additionally, the CFO and accounting/treasury department regularly reconcile the Debtor's books and records to ensure that all transfers are accounted for properly.

## II. Bank Accounts

9. The Bank Accounts are described in the following table:

---

[2] The account number for the general operational account ends in 0224.
[3] The account number for Debtor's payroll account ends in 9006.
[4] The account numbers for Debtor's two petty cash accounts end in 6903 and 9801.
[5] The account number for Debtor's merchant services account ends in 0822.
[6] The account number for the Debtor's Feed Mill revenue account ends in 4493.
[7] The account number for Debtor's pre-petition check funding account ends in 4211.

| Account(s) | Account(s) Description |
|---|---|
| Regions Bank (ending in 0224) | General operational account that receives revenue from Processing Plant and seafood reselling division. |
| Regions Bank – Demopolis (ending in 4493) | Receives revenue from the Feed Mill, which will then be transferred to the account ending to 0224. |
| Regions Bank – Payroll (ending in 9006) | Receives funds from account ending 0224, which are then used to fund Debtor's payroll. |
| Robertson Banking Company – Demopolis Petty Cash (ending in 9801) | A small amount of cash is held in this account for petty cash and emergency needs of the Feed Mill. |
| Merchants & Farmers (Eutaw) - Petty Cash (ending in 6903) | Receives revenue from walk-in sales at Processing Plant, some of which is then transferred to the account ending in 0224. A small amount of cash is held in this account for petty cash and emergency needs of the Processing Plant. |
| Regions Bank (ending in 0822) | Receives' revenue from Debtor's food truck, which is then transferred to the account ending in 0224. |
| CoBank (ending in 4211) | Holds cash sufficient to fund checks issued pre-petition in the ordinary course of business. Once those checks are honored, this account will close. |

10.     The Debtor pays its Cash Management Banks approximately $10,000 per month in the aggregate on account of fees incurred in connection with the Bank Accounts (the "Bank Fees"). As of the Commencement Date, the Debtor believes there are approximately $3,000 in pre-petition Bank Fees.

### III.     CoBank Account

11.     As set forth in the above chart, the Debtor currently has an account at CoBank which holds cash sufficient to fund checks issued in the ordinary course of business, many of which are made payable to critical vendors such as farmers and ingredient suppliers, in the combined amount of approximately $836,040.18 prior to the Commencement Date.

12.     To the extent any of these checks are presented for payment on Tuesday, such checks will be dishonored by CoBank unless this Court enters an Order approving the relief sought herein no later than 12:00 p.m. (MST) on Wednesday, January 30, 2019.  Accordingly, it is absolutely critical that this Court address this Motion with all due haste.

## IV.     Business Forms

13.     The Debtor utilizes certain, limited preprinted correspondence and business forms, such as letterhead, checks, and other business correspondence (the "Business Forms"), in the ordinary course of its business. The Debtor also maintains books and records to document, among other things, its profits and expenses. To minimize unnecessary additional expenses to its estate, the Debtor requests that the Court authorize its continued use of its Business Forms to the extent they are preprinted, all as such forms were in existence immediately before the Commencement Date, without reference to the Debtor's status as debtor in possession, rather than requiring the Debtor to incur the unnecessary expense, nuisance, and delay of ordering entirely new forms. The Debtor submits that once it has exhausted its existing stock of Business Forms, it shall ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtor shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

14.     The Debtor intends to immediately change its signature cards and account names to include "Debtor In Possession".

### Basis for Relief

## I.     Maintaining the Existing Cash Management System Is Essential to the Debtor's Ongoing Operations and Restructuring Efforts.

15.     By this Motion, the Debtor seeks authority to continue its existing Cash Management System. Continuation of the Cash Management System is permitted pursuant to

section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Additionally, courts in this and other districts have observed that use of an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). Courts in this district have allowed debtors in chapter 11 cases to maintain their existing cash management systems and such relief is generally non-controversial. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. July 15, 2015) (authorizing Debtor to continue to use cash management system, maintain existing bank accounts, and waive requirements of Bankruptcy Code section 345); *In re Dixie Pellets, LLC*, Case No. 0905411 (TOM) (Bankr. N.D. Ala. July 1, 2010); *In re BFW Liquidation, LLC, f/k/a Bruno's Supermarkets, LLC*, Case No. 09-00634 (TOM) (Bankr. N.D. Ala. Feb. 9, 2009) (same); *see also In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2018) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (authorizing Debtor to continue to use cash management system and maintain existing bank accounts).[8] Accordingly, the Debtor respectfully requests that the Court allow them to operate each of the Bank Accounts listed on **Exhibit 1** annexed to **Exhibit A** attached hereto, as they were maintained in the ordinary course of business before the Commencement Date.

---

[8] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtor's proposed counsel.

## II. Maintaining the Existing Cash Management Systems Will Not Harm Parties in Interest.

16.     Continued use of the Cash Management System will facilitate the Debtor's transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of post-petition obligations. The Debtor respectfully submits that parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System, including maintenance of the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of pre-petition obligations.  Additionally, the Debtor intends to work with the Bankruptcy Administrator to ensure full disclosure of its Cash Management System.

**17.**     Specifically, with the assistance of its advisors, the Debtor has implemented internal control procedures that prohibit payments on account of pre-petition debts without the prior approval of the Debtor's accounting department, led by the Debtor's CFO. In light of such protective measures, the Debtor submits that maintaining the Cash Management System is in the best interests of its estates and creditors.

## III. Authorizing the Debtor to Continue Using Debit, Wire, and ACH Payments Is Warranted.

18.     As discussed above, in the ordinary course of business, the Debtor conducts transactions through ACH transfers and other similar methods. In addition, a certain percentage of the Debtor's receipts are received through wire transfer payments. If the Debtor's ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtor may be unable to perform under certain contracts, its business operations may be unnecessarily disrupted, and its estates will incur additional costs. Thus, the Debtor seeks

authority to continue to administer the Bank Accounts and pay and honor all post-petition checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof.

**IV.  Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.**

19.     The Debtor respectfully requests that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business. In this regard the Cash Management Banks should be authorized to: (a) receive, process, honor, and pay any and all checks, ACH transfers and other instructions and drafts payable through, drawn, or directed on such Bank Accounts on account of any claims arising before or after the Commencement Date by holders, makers, or other parties entitled to issue instructions with respect thereto, including all outstanding checks issued, presented, negotiated, or drawn pre-petition; (b) accept and honor all representations from the Debtor as to which checks, draws, wires, or ACH transfers should be honored or dishonored consistent with any order of the Bankruptcy Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Commencement Date; and (c) continue to charge the Debtor the Bank Fees and charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Commencement Date, in the ordinary course.

20.     The Debtor further requests that, to the extent a Cash Management Bank honors a pre-petition check or other item drawn on any Bank Account either: (a) at the direction of the Debtor; or (b) in a good-faith belief that the Court has authorized such pre-petition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtor or to its estate on account of such pre-petition check or other item honored post-petition. The Debtor

respectfully submits that such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

21. Courts in this and other districts have, in similar chapter 11 cases, granted such relief when critical to a debtor's post-petition business operations and restructuring efforts. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. July 15, 2015) (authorizing the Debtor's continued use of existing bank accounts); *In re Moore-Handy, Inc.*, Case No. 09-04198 (TBB) (Bankr. N.D. Ala. July 27, 2009); *In re Dixie Pellets, LLC,* Case No. 09-05411 (TOM) (Bankr. N.D. Ala. July 1, 2010) (same); *In re BFW Liquidation, LLC, f/k/a Bruno's Supermarkets, LLC*, Case No. 09-00634 (TOM) (Bankr. N.D. Ala. Feb. 9, 2009) (same); *see also In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2018) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (same).

## V. Compliance with Section 345 of the Bankruptcy Code.

22. Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the U.S. secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

23.     The safety of the financial institutions utilized by the Debtor provides sufficient protection under section 345 of the Bankruptcy Code. Without question, the Cash Management Banks are established and secure financial institutions. On information and belief, the credit of the Debtor's depository institutions is at least as secure as any corporate surety that might issue the bond required by section 345 if that requirement is deemed not to be met or not waived. Additionally, all of the Bank Accounts are FDIC insured, and at least four of the seven Bank Accounts hold a daily balance that does not exceed the FDIC-insured amount. Thus, the Debtor believes that any funds that are deposited in the Bank Accounts are secure and comply with section 345 of the Bankruptcy Code. The Debtor, therefore, requests that the Court permit it to maintain any deposits in its Bank Accounts in accordance with its existing practices, without the need for any further bonding obligation.

**VI.     The Court Should Authorize the Debtor to Continue Using Its Existing Business Forms.**

24.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtor requests that it be authorized to continue to use its preprinted Business Forms, substantially in the forms existing immediately before the Commencement Date, without reference to its status as debtor in possession. The Debtor submits that, given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtor is authorized to continue to use its Business Forms substantially in the forms existing immediately before the Commencement Date. Parties doing business with the Debtor undoubtedly will be aware of its status as debtor in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense. The Debtor submits that once it has exhausted its existing stock of preprinted Business Forms, it will ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are

04709522.4

10

generated electronically, the Debtor shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

25.     In other large chapter 11 cases, courts in this and other districts have allowed Debtor to use business forms that were printed pre-petition without the "debtor in possession" label. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. July 15, 2015) (authorizing Debtor to continue using its preprinted check, substantially in the form existing immediately before the commencement of its chapter 11 cases); *In re Dixie Pellets, LLC,* Case No. 09-05411 (TOM) (Bankr. N.D. Ala. July 1, 2010); *In re Moore-Handley, Inc.*, Case No. 09-04198 (TBB) (Bankr. N.D. Ala. July 27, 2009); *In re BFW Liquidation, LLC, f/k/a Bruno's Supermarkets, LLC*, Case No. 09-00634 (TOM) (Bankr. N.D. Ala. Feb. 9, 2009) (same); *see also In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2018) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (same).

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

26.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Commencement Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtor to (a) continue to operate its Cash Management System, (b) honor certain pre-petition obligations related thereto, and (c) maintain existing Business Forms, as well as granting the other relief requested herein, is integral to the Debtor's ability to transition its operations into this chapter 11 case. Failure to receive such authorization and other relief during the first 21 days of this chapter 11 case would severely disrupt the Debtor's operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its businesses in the ordinary

course and preserve the ongoing value of the Debtor's operations and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Reservation of Rights

27.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a)

and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

29.     The Debtor will provide notice of this Motion to: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the proposed DIP Lender; (d) the International Chemical Workers Union Council of the United Food and Commercial Workers Union and Its Local 1038C; (e) the United States Attorney's Office for the Northern District of Alabama; (f) the Internal Revenue Service; (g) the United States Environmental Protection Agency; (h) the Alabama Department of Environmental Management; (i) the United States Department of Agriculture; (j) the United States Food and Drug Administration; (k) the Alabama Department of Agriculture & Industries – Weights and Measures Division; (l) the office of the Attorney General for the State of Alabama; (m) Regions Bank; (n) Robertson Banking Company; (o) Merchants and Farmers Bank; (p) CoBank; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

30.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this the 28th day of January, 2019.

*/s/ J. Leland Murphree*
J. Leland Murphree
Jayna P. Lamar
Ryan D. Thompson
Evan N. Parrott
Wes Bulgarella

*Proposed Counsel to the Debtor*

**OF COUNSEL:**

**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North,
2400 Regions/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000
lmurphree@maynardcooper.com
jlamar@maynardcooper.com
rthompson@maynardcooper.com
eparrott@maynardcooper.com
wbulgarella@maynardcooper.com

**Exhibit A**

**Proposed Order**

04709522.4

15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

IN RE:

SOUTHFRESH AQUACULTURE, LLC,

Debtor.

)
)
)
)
)
)
)
)

Case No. 19-70152

Chapter 11

## ORDER (I) AUTHORIZING
## THE DEBTOR TO (A) CONTINUE TO OPERATE
## ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
## PRE-PETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
## EXISTING BUSINESS FORMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[9] of the above-captioned Debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), (i) authorizing the Debtor to (a) continue to operate its Cash Management System, (b) honor certain pre-petition obligations related thereto, (c) maintain existing Business Forms in the ordinary course of business, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in

---

[9] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the First day Declaration, as applicable.

16

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.   The Motion is GRANTED as set forth herein.

2.   The Debtor is authorized, but not directed, to: (a) continue operating the Cash Management System as described in the Motion; (b) honor its pre-petition obligations related thereto; and (c) maintain existing Business Forms.

3.   The Debtor is further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Commencement Date, including those accounts identified on **Exhibit 1** attached hereto; (b) use, in its present form, all preprinted correspondence and Business Forms without reference to the Debtor's status as debtor in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (e) pay the Bank Fees in the ordinary course, and to otherwise perform its obligations under the documents governing the Bank Accounts. The Debtor is authorized, but not directed, to continue using, in its present form, the preprinted Business Forms existing immediately before the Commencement Date, without reference to the Debtor's status as debtor in possession; *provided* that once the Debtor has exhausted its existing stock of preprinted Business Forms, the Debtor shall ensure that any new Business Forms are clearly labeled "Debtor In Possession"; *provided, further,* that with respect to any Business Forms that exist or are generated electronically, the Debtor shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

4.     The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course. Additionally, the Cash Management Banks are authorized to (a) receive, process, honor, and pay any and all checks, ACH transfers and other instructions and drafts payable through, drawn, or directed on such Bank Accounts on account of any claims arising before or after the Commencement Date by holders, makers, or other parties entitled to issue instructions with respect thereto, including all outstanding checks issued, presented, negotiated, or drawn pre-petition; (b) accept and honor all representations from the Debtor as to which checks, draws, wires, or ACH transfers should be honored or dishonored consistent with any order of the Bankruptcy Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Commencement Date; and (c) continue to charge the Debtor the Bank Fees and charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Commencement Date, in the ordinary course.

5.     The Debtor is authorized to close Bank Accounts or open new Bank Accounts in the ordinary course of business; provided that any new account shall be with a bank (a) insured by the FDIC and (b) organized under the laws of the U.S. or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, a financial institution that is sufficiently secure to justify a waiver of the requirements of Bankruptcy Code section 345(b). The relief granted in this Order is extended to any new bank account opened by the Debtor after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

6.     All banks, including the Cash Management Banks, provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed

Bank Accounts or otherwise issued before the Commencement Date for which the Debtor specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

7.    All banks, including the Cash Management Banks, provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Commencement Date for which the Debtor specifically issues stop payment orders in accordance with the documents governing such Bank Accounts.

8.    In the course of providing cash management services to the Debtor, each of the Cash Management Banks is authorized, without further order of this Court, to deduct the applicable fees from the appropriate Bank Accounts.

9.    Subject to the terms set forth herein, any bank, including a Cash Management Bank, may rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Commencement Date should be honored pursuant to any order of this Court, and no bank that honors a pre-petition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtor or (b) in a good-faith belief that this Court has authorized such pre-petition check or item to be honored shall be deemed to be nor shall be liable to the Debtor or its estates on account of such pre-petition check or other item being honored post-petition, or otherwise deemed to be in violation of this Order.

10.    Any banks, including the Cash Management Banks, are further authorized to

(a)    honor the Debtor's directions with respect to the opening and closing of any Bank Account; and

(b)    accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

11.    The Debtor is authorized to deposit and invest its cash and cash equivalents in the Bank Accounts consistent with its pre-petition practices with the Cash Management Banks. The

Debtor is relieved from the obligations under Bankruptcy Code section 345(b) to obtain a bond from any entity with which money is deposited or maintained in the Bank Accounts, and the requirements of section 345(b) of the Bankruptcy Code are waived.

12.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

13.     Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Commencement Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Commencement Date.

14.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order or the Motion are valid, and the Debtor expressly reserved its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

15.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the

Debtor's designation of any particular check or electronic payment request as approved by this Order; *provided* that any check, draft, or other notification that the Debtor advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Commencement Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.

16.     The Debtor is authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to pre-petition amounts owed in connection with any Cash Management System.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19.     Notwithstanding anything to the contrary in this Order, any payment made (or to be made) and any authorization contained in this Order shall be subject to the terms, conditions, limitations, and requirements of any interim order concerning post-petition secured financing and any subsequently issued final order concerning post-petition secured financing entered by the Court.

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:

_____
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

## Bank Accounts

Case 19-70152-JHH11   Doc 9   Filed 01/28/19   Entered 01/28/19 16:16:26   Desc Main
Document      Page 22 of 23

**Bank Accounts**

| Bank Name | Account Number (last four digits) |
|---|---|
| Regions Bank | 0224 |
| Regions Bank | 4493 |
| Regions Bank | 9006 |
| Robertson Banking Company | 9801 |
| Merchants and Farmers | 6903 |
| Regions Bank | 0822 |
| CoBank | 4211 |

Case 19-70152-JHH11    Doc 9    Filed 01/28/19    Entered 01/28/19 16:16:26    Desc Main
Document      Page 23 of 23