# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: | ) | |
| | ) | Case No. 19-70152 |
| SOUTHFRESH AQUACULTURE, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

### DEBTOR'S MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE PAYMENT OF CRITICAL VENDOR CLAIMS, AND (II) GRANTING RELATED RELIEF

SouthFresh Aquaculture, LLC, as debtor and debtor in possession in the above-captioned chapter 11 cases (the "Debtor"),[1] respectfully state the following in support of this motion (the "Motion"):

### Relief Requested

1.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") (i) authorizing, but not directing, the Debtor to pay in the ordinary course of business all undisputed, liquidated, pre-petition amounts owing on account of critical vendor claims, and (ii) granting related relief.

### Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Northern District of Alabama (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Northern District of Alabama, dated January 12, 1995. The Debtor confirms its consent, pursuant to Rule 7008 of the Federal

---

[1] A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, is set forth in greater detail in the *Declaration of Justin Funk, Chief Executive Officer of SouthFresh Aquaculture, LLC, in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petition for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on January 28, 2019 (the "Commencement Date"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

04705723.6

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362, 363, and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

## **Procedural Background**

5.      On the Commencement Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committee has been appointed or designated.

## **Critical Vendors**

6.      At a high level, the Debtor's ordinary course operations can be separated into three general divisions: (1) catfish processing; (2) feed manufacturing; and (3) seafood reselling. For the catfish processing operation, Debtor purchases catfish from farmers, processes the catfish at the Processing Plant, and sells the processed catfish to customers.   For the feed manufacturing operation, Debtor purchases feed ingredients, manufactures the feed, and sells the manufactured feed to customers. For the seafood reselling operation, Debtor purchases seafood from a variety of sources, which it then resells to customers. For each of these operations, Debtor relies heavily on farmers, specialized vendors, ingredients suppliers, repairmen, transportation and shipping providers, and storage/ice providers (collectively, the "<u>Critical Vendors</u>"), each of which provide

Case 19-70152-JHH11    Doc 10    Filed 01/28/19    Entered 01/28/19 16:21:38    Desc Main
Document      Page 2 of 21

the Debtor with the materials, supplies, and/or services necessary for the Debtor to operate its three divisions on a daily basis.

7.     In many cases, given the relatively small industry size, there are a limited number of Critical Vendors that can service the Debtor's operational needs. In addition to the processing and manufacturing processes, the Debtor is usually responsible for arranging the shipping of ingredients and products through the supply chain. The materials, supplies, and services provided by the Debtor's Critical Vendors are essential to the day-to-day operations of the Debtor's business. Any disruption to the Debtor's supply network would have an immediate negative impact on the Debtor's business. For example, fast and efficient transportation is necessary for the Debtors' successful operations, not only to avoid a backup of excess inventory, but also to ensure the preservation of ingredients and product and maximization of revenue shipments.

8.     The Debtor obtains materials, supplies, and services from the Critical Vendors, often on an order-by-order basis and without long-term contracts—replacement of which likely would be impossible or would result in substantially higher costs for the Debtor. The Debtor relies on timely and frequent delivery of these goods, equipment, supplies, and services, and any interruption in this supply—however brief—would disrupt the Debtor's operations and impact its revenue, likely causing irreparable harm to its business, reputation, goodwill, employees, customer base, and market share. Such harm would far outweigh the cost of payment of the Critical Vendors Claims.

9.     The Debtor believes some of their vendors may be unfamiliar with the chapter 11 process and unwilling to do business on existing terms—assuming such parties will continue to supply the Debtor at all. Any loss of trade terms, whether on account of demands for cash in advance, cash on delivery, or otherwise, will negatively impact the Debtor's liquidity and jeopardize its ability to maintain and service its equipment and to purchase any additional equipment required

to service their clients. In addition, certain of the Critical Vendors may be able to assert mechanics' liens under applicable state law.

10.     After a thorough review of its operations and potential alternatives, the Debtor determined, in the exercise of its business judgment, that payment of certain pre-petition Critical Vendor claims (the "Critical Vendor Claims") is essential to avoid costly disruptions to its operations.

11.     The Critical Vendors generally fall into the following categories:

- Farmers. The Debtor purchases catfish from a limited group of farmers for its catfish processing operation. The Debtor's catfish processing operation cannot continue without the catfish provided by its farmers. Similarly, the farmers have few other options and count on prompt weekly payment from the Debtor. Thus, maintaining positive, ongoing relationships with these farmers is necessary for the Debtor to maintain the functionality of its business operations and reputation.

- Ingredient Suppliers. Debtor purchases feed ingredients from a core group of ingredient suppliers for its feed manufacturing operation. Similar to the significant role farmers play in the catfish processing operation, feed ingredient suppliers are necessary for the Debtor's feed manufacturing operation. These ongoing relationships are necessary for the Debtor's ability to maintain the functionality of its business operations.

- Seafood Suppliers. Debtor purchases seafood from a variety of sources, including importers and fishermen for its seafood reselling operation. Without a steady stream of seafood products, Debtor will not be able to keep its business operations functional.

- Shippers and Packagers. Debtor utilizes shipping and packaging vendors in all three of its major business operations. For the catfish processing operation, Debtor may have to pay to ship the catfish from the farmer to its cold storage facilities and/or Processing Plant. After the catfish is processed, the Debtor has to package and ship the processed fish to its cold storage facilities and/or customers across the country. For the feed manufacturing operation, Debtor must ship the feed ingredients from the ingredient suppliers to the Feed Mill and, after the manufacturing process, package and ship the feed to its customers across the country. For the seafood reselling operation, Debtor must ship the seafood from the suppliers to its cold storage facilities and then package and ship the seafood to other cold storage facilities and/or customers across the country. It is vital for Debtor's

operations for it to ship and package goods and materials throughout the supply chain. In many cases, the shippers and packaging supplies vendors are irreplaceable and represent the only means to transport and package the Debtor's goods. Without the vendors who provide these services, Debtor's business operations would not be functional.

- <u>Cold Storage and Ice Providers</u>. The Debtor uses cold storage and ice providers to preserve the catfish and other seafood throughout the supply chain. Without ice, the catfish would perish during the shipping process. Likewise, the catfish and other seafood must be stored in the proper facilities before ultimately reaching the Debtor's customers across the county. For these reasons, cold storage and ice providers are vital to the Debtor's business operations. Without these vendors, the Debtor would be unable to continue operating.

- <u>Repair, Maintenance, and Sanitation Service Providers</u>. Although the Debtor performs its own routine maintenance and repair work on the Processing Plant and the Feed Mill, the Debtor also relies heavily on other essential vendors for more extensive, complex repair, maintenance, and sanitation services that the Debtor is unable to perform in a cost-efficient manner or does not have the technical expertise to administer. These providers are critical to the safety and sanitation of the Debtor's personnel and its catfish, seafood, and feed products. From time to time, these also supply the Debtor with a limited quantity of replacement parts largely related to their repair services. Further, it is necessary for the Debtor's processing and manufacturing to meeting regulatory standards for sanitation. As a result, the Debtor continually requires specialized chemicals from specific providers to sanitize its equipment and premises to ensure its compliance with health and safety regulations. Without these providers, the Debtor will not be able to keep some of their most highly sought-after equipment sanitary and in good working order.

- <u>Rebate Program Counterparty</u>. One of Debtor's most significant customers is Sysco Corporation, which is one of the largest sellers, marketers, and distributors of food products to restaurants, healthcare and educational facilities, and lodging establishments around the world. Sysco purchases catfish and other seafood products from Debtor. As part of this transaction, Sysco regularly provides certain services, including marketing and advertising, to Debtor and is able to charge back certain costs to Debtor in the form of a rebate. Sysco accounts for approximately 40% of Debtor's manufactured catfish sales and approximately 80% of Debtor's other seafood sales. Not only is Sysco a vital customer of Debtor's goods, the marketing and advertising services it provides to Debtor are instrumental to Debtor's ongoing business operations. Without the ability to charge back certain costs to Debtor as part of its business relationship, Sysco would likely choose to purchase its manufactured catfish and other seafood from another company.

Debtor consequently would lose Sysco's business and the marketing and advertising services it provides. Accordingly, this rebate program is vital to Debtor's continuing operations.

12. By this Motion, the Debtor seeks authority to pay, in its sole discretion based on its reasonable business judgment, up to approximately $1,090,000[2] on account of certain pre-petition Critical Vendor Claims.

13. Subject to the Court's approval, the Debtor intends to pay the Critical Vendor Claims only to the extent necessary to preserve its business. In return for paying the Critical Vendor Claims, the Debtor will use commercially reasonable efforts to condition payment of the claims upon each claimant's agreement to continue supplying goods and/or services on terms that were in place in the 120 days prior to the Commencement Date or are otherwise acceptable to the Debtor in light of customary industry practices (the "Customary Trade Terms").

14. In addition, the Debtor requests that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then: (a) such payment may be deemed to be an improper post-petition transfer on account of a pre-petition claim, and, therefore, immediately recoverable by the Debtor in cash upon written request; (b) upon recovery by the Debtor, any pre-petition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding post-petition balance due from the Debtor to such party, the Debtor may elect to re-characterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance and such supplier or vendor will be required to repay to the Debtor such paid

---

[2] In the event the Court enters an Order granting the relief requested by the Debtor in its *Motion for Entry of Order (I) Authorizing the Debtor to (A) Continue to Operate Its Cash Management System, (B) Honor Certain Pre-Petition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (II) Granting Related Relief*, a significant percentage of this amount will be eliminated since a majority thereof is set to be paid pursuant to checks issued by the Debtor in the ordinary course of business on Thursday, January 24, 2019.

04705723.6

amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**Basis for Relief Requested**

**I.     The Debtor Should Be Authorized to Pay the Critical Vendor Claims.**

**A.     Payment of the Critical Vendor Claims Is Necessary to Protect and Preserve the Estate.**

15.     The relief requested herein with respect to payment of the Critical Vendor Claims may be granted by the Court under the Court's general equitable powers as codified in section 105(a) of the Bankruptcy Code. This section empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionoshpere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882)). Under section 105(a), a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); s*ee also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's reorganization.") (internal quotation omitted).

16.     Courts regularly have recognized that it is appropriate to authorize the payment of pre-petition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServe, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing the payment of certain prepetition claims pursuant to the "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000)

(business transactions critical to the survival of the business of the debtor is exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation).

17.     Courts in this district and others have routinely authorized payments of pre-petition obligations in similar circumstances. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. Sept. 4, 2015) (authorizing debtors to pay certain pre-petition obligations pursuant to authority granted under section 105); *see also In re Westmoreland Coal Company*, Case No. 18-35672 (MI) (Bankr. S.D. Tex. Oct. 9, 2018) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (same); *In re Peabody Energy Corp.*, Case No. 16-42529-399 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016 (same).[3]

**B.     Payment of the Critical Vendors Claims as Provided Herein Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity.**

18.     Courts frequently authorize the payment of pre-petition obligations under section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain pre-petition claims if the debtor is able to "show that a sound business purpose justifies such actions." *See In re Allied Holdings, Inc.*, 337 B.R. 716, 721 (Bankr. N.D. Ga. 2005); *In re Georgetown Steel Co., LLC*, 306 B.R. 549, 555 (Bankr. D.S.C. 2004); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (citations omitted); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005)

---

[3] Based on the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtor's proposed counsel.

(stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

19.     Further, as discussed above, the Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Under section 105(a), courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of pre-petition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

20.     Federal courts have consistently used the "doctrine of necessity" or the "necessity of payment" rule to permit post-petition payment of pre-petition obligations where necessary to preserve the value of a debtor's estate. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Id.*; *see also In re Just For Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); 2 COLLIER ON BANKRUPTCY, 105.02[4][a] (16th ed. rev. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay pr-epetition claims immediately).

21.     Granting the Debtor the narrowly tailored relief sought herein is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). As described above, the Debtor requires a steady stream of supplies and related services to ensure it has inventory to meet customer demand, as well as other goods and services critical to the value of the Debtor's business. As the Critical Vendors do not have long-term contractual obligations to the Debtor, the Debtor must maintain the ability to continue to pay the Critical Vendors on an ongoing basis to ensure uninterrupted goods and services. Without the supplies and services described in this Motion, the Debtor would experience a significant disruption of its supply chain while it searches, likely in vain, for substitute vendors, suppliers, and shippers, which would in turn jeopardize customer goodwill and significantly impair the value of the Debtor's business. Ensuring these Critical Vendors continue to supply and serve is therefore vital to the success of these chapter 11 cases and the ability of the Debtor to remain a going-concern.

22.     Courts in this jurisdiction and others have authorized payment of pre-petition claims for critical vendors under sections 363(b) and 105(a) of the Bankruptcy Code. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. Sept. 4, 2015) (authorizing up to $8.2 million in payments to critical vendors); *see also In re EXCO Res., Inc.*, Case No. 18-30155 (MI) (Bankr. S.D. Tex. Jan. 10, 2018) (authorizing up to $28.8 million in payments to critical vendors); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017) (authorizing up to $39.5 million in payments to critical vendors); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (authorizing up to $6.45 million in payments to shippers, lien claimants, and 503(b)(9) claimants); *In re Peabody Energy Corp.*, Case No. 16-42529-399

(BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (authorizing up to $6.5 million in payments to lien claimants).

23.     Moreover, the failure to make timely payment of certain Critical Vendor Claims would threaten the Debtor's ability to operate and may subject the Debtor's assets to the perfection of liens. Under certain state laws, to the extent the Debtor has not paid for shipping, storage, or repair services, these vendors may have a lien on the goods in its possession, which secures the charges or expenses incurred in connection with repair of the equipment or the transportation or storage of the goods.[4] In addition, pursuant to section 363(e) of the Bankruptcy Code, some of these Critical Vendors, as bailees, may be entitled to adequate protection for any valid possessory lien. In light of these circumstances, certain Critical Vendors may assert that they have possessory liens on goods currently in their possession for transportation, storage, or repair costs and may refuse to deliver or release those goods or equipment in their possession until their invoices are paid and their liens redeemed. Some claimants may be unwilling to release the goods in their possession on which they may be entitled to assert liens for fear of releasing security for their pre-petition claims. Moreover, shippers simply refusing to deliver the Debtor's goods if they are not paid could severely disrupt the Debtor's operations and cause the Debtor to lose a substantial amount of revenue and future business. Accordingly, because the Debtor is dependent on these claimants, it is essential that the commencement of these cases not give any Critical Vendors reason or excuse to cease performing their obligations.

24.     Courts in this district and other jurisdictions have authorized payments to such vendors under similar circumstances. *See, e.g., In re Walter Energy, Inc.*, Case No. 15-02741

---

[4] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to state law." U.C.C. § 7-307(a) (2003).

(TOM) (Bankr. N.D. Ala. Sept. 4, 2015) (authorizing debtors to pay shippers, storage providers, and other lien claimants up to $12.5 million); *see also In re Westmoreland Coal Company*, Case No. 18-35672 (MI) (Bankr. S.D. Tex. Oct. 9, 2018) (authorizing debtors to pay pre-petition expenses of shipping claims and lien claims, among others); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (authorizing debtors to pay shippers and lien claimants up to $2.2 million); *In re Peabody Energy Corp.*, Case No. 16-42529-399 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016 (authorizing debtors to pay lien claimants up to $6.5 million).[5]

25.     Contemporaneous with this Motion, the Debtor has filed the *Debtor's Emergency Motion to Set Expedited Hearing on First Day Motions* requesting the Court to schedule expedited hearings on several First Day Motions, including this Motion. Expedited relief is necessary with respect to this Motion because it is urgent to pay several of the Critical Vendor Claims on or shortly after the Commencement Date. For example, Debtor must pay farmers on Thursday, January 31, 2019 to ensure it has a sufficient amount of catfish for its processing operation.

<u>**Processing of Checks and Electronic Fund Transfers Should Be Authorized**</u>

26.     The Debtor believes it has sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and proposed debtor-in-possession financing. In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims. Therefore, the Debtor respectfully requests that the Court authorize and direct all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

---

[5] Copies of these orders are available upon request to the Debtors' proposed counsel.

04705723.6

12

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

27.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Commencement Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtor to pay the Obligations, and granting the other relief requested herein is integral to the Debtor's ability to transition their operations into this chapter 11 case. Failure to receive such authorization and other relief during the first 21 days of this chapter 11 case would severely disrupt the Debtor's operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its business in the ordinary course and preserve the ongoing value of the Debtor's operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Reservation of Rights

28.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek

avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

29.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

30.     The Debtor will provide notice of this Motion to: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the proposed DIP Lender; (d) the International Chemical Workers Union Council of the United Food and Commercial Workers Union and Its Local 1038C; (e) the United States Attorney's Office for the Northern District of Alabama; (f) the Internal Revenue Service; (g) the United States Environmental Protection Agency; (h) the Alabama Department of Environmental Management; (i) the United States Department of Agriculture; (j) the United States Food and Drug Administration; (k) the Alabama Department of Agriculture & Industries – Weights and Measures Division; (l) the office of the Attorney General for the State of Alabama; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

31.     No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of page intentionally blank]*

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this the 28th day of January, 2019.

/s/ J. Leland Murphree
J. Leland Murphree
Jayna P. Lamar
Ryan D. Thompson
Evan N. Parrott
Wes Bulgarella

*Proposed Counsel to the Debtor*

**OF COUNSEL:**

**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North,
2400 Regions/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000
lmurphree@maynardcooper.com
jlamar@maynardcooper.com
rthompson@maynardcooper.com
eparrott@maynardcooper.com
wbulgarella@maynardcooper.com

**Exhibit A**

**Proposed Order**

04705723.6                              17

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

|                              |     |                      |
|------------------------------|-----|----------------------|
|                              | )   |                      |
| IN RE:                       | )   |                      |
|                              | )   | Case No. 19-70152    |
| SOUTHFRESH AQUACULTURE, LLC, | )   |                      |
|                              | )   | Chapter 11           |
| Debtor.                      | )   |                      |

**ORDER (I) AUTHORIZING THE PAYMENT OF
<u>CRITICAL VENDOR CLAIMS, AND (II) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>"),[6] of the above-captioned debtor and debtor in possession (the "<u>Debtor</u>"), for entry of an order (this "<u>Order</u>"), (i) authorizing, but not directing, the payment of critical vendor claims, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

---

[6] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

04705723.6

18

1.      The Motion is GRANTED as set forth herein.

2.      The Debtor is authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the Critical Vendor Claims in an amount not to exceed $1,090,000 in the aggregate.

3.      In return for payment of the Critical Vendor Claims, the Debtor, in its discretion, will obtain agreements from any party receiving payment to provide goods and/or services to the Debtor on Customary Trade Terms or such other terms as may be agreed upon between the Debtor and the claimant; provided, further, that if any party accepts payment hereunder and does not continue supplying goods and/or services to the Debtor in accordance with the Customary Trade Terms, (a) the Debtor and the agent under the Debtor's debtor-in-possession facility may take any and all appropriate steps to recover from such party any payments made to it on account of its pre-petition claim to the extent that such payments exceed the post-petition amounts then owing to such party; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; (c) if an outstanding post-petition balance is due from the Debtor to such party, (i) the Debtor may elect to re-characterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance and (ii) such party will be required to repay to the Debtor such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise; and (d) the Debtor and the agent under the Debtor's debtor-in-possession facility reserve all rights to assert that such payments made were avoidable post-petition transfers under section 549 of the Bankruptcy Code and recoverable by the Debtor. In the event that the Debtor recovers any such funds pursuant to the foregoing, the applicable Obligation shall be reinstated as a pre-petition claim in the amount so recovered.

04705723.6                                      19

4.      Any party that accepts payment from the Debtor on account of a Critical Vendor Claim shall be deemed to have agreed to the terms and provisions of this Order.

5.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order or the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Order.

7.      The Debtor is authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this chapter 11 case with respect to prepetition amounts owed in connection with any of the Critical Vendor Claims.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.      Notwithstanding anything to the contrary in this Order, any payment made (or to be made) and any authorization contained in this Order shall be subject to the terms, conditions, limitations, and requirements of any interim order concerning post-petition secured financing and any subsequently issued final order concerning post-petition secured financing entered by the Court.

11.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:

_____
UNITED STATES BANKRUPTCY JUDGE