**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

|                                          |     |                          |
| ---------------------------------------- | --- | ------------------------ |
|                                          | )   |                          |
| IN RE:                                   | )   |                          |
|                                          | )   | Case No. 19-70152-JHH11  |
| SOUTHFRESH AQUACULTURE, LLC,             | )   |                          |
|                                          | )   | Chapter 11               |
| Debtor.                                  | )   |                          |

**ORDER CONFIRMING FIRST AMENDED PLAN OF**
**REORGANIZATION OF SOUTHFRESH AQUACULTURE, LLC**

This cause came to be heard on December 20, 2019, before the Honorable Jennifer H. Henderson, United States Bankruptcy Judge for consideration of confirmation of the *First Amended Plan of Reorganization* (Doc. 630) (the "Plan")[1] filed by SouthFresh Aquaculture, LLC (the "Debtor") on November 18, 2019. After reviewing (i) the *Debtor's First Amended Disclosure Statement for Plan of Reorganization* (Doc. 628) (the "Disclosure Statement"); (ii) the Plan, as amended, the terms of which are incorporated herein; (iii) the *Declarations* of Mark Lamb (Doc. 665), Justin Funk (Doc. 661), and Thomas Hallin (Doc. 662); (iv) the complete record in this Bankruptcy Case, and after receiving evidence, and hearing arguments of counsel at the confirmation hearing held before the Bankruptcy Court on December 20, 2019 (the "Confirmation Hearing"), the Bankruptcy Court makes the following findings of fact and conclusions of law.[2] This order (the "Confirmation Order") constitutes the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rules 7052 and 9014. All findings of fact shall constitute findings of fact even if stated as conclusions of law, and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
[2] The below set forth findings of fact and conclusions are in addition to the findings of fact and conclusions of law stated on the record of the Confirmation Hearing, which are incorporated herein by reference.

05184103.4

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.     <u>Exclusive Jurisdiction and Core Proceeding</u>. The Bankruptcy Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O). The Court may exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The Debtor is and remains qualified as a "Debtor" under 11 U.S.C. § 109.

B.     <u>Venue</u>. Venue in the Northern District of Alabama was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.

C.     <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket in the Bankruptcy Case maintained by the Clerk of Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, offered, or introduced at the hearings, including, but not limited to, the Plan and Disclosure Statement.

D.     <u>Confirmation Hearing</u>. The Bankruptcy Court convened the Confirmation Hearing on December 20, 2019, at 10:00 a.m.

E.     <u>Solicitation Order</u>. On November 19, 2019, the Bankruptcy Court entered an order approving the Disclosure Statement that included certain solicitation and balloting procedures and established deadlines relating to the confirmation of the Plan (the "<u>Disclosure Statement Order</u>") (Doc. 635). Among other things, the Disclosure Statement Order established certain procedures for soliciting votes with respect to the Plan, including setting deadlines for filing objections to confirmation of the Plan and approving the form of the ballot to be used by creditors voting to accept or reject the Plan. Consistent with the Bankruptcy Court's ruling on the Debtor's oral motion at the Confirmation Hearing to modify the Disclosure Statement Order, the first sentence of footnote 4 of the Disclosure Statement Order is hereby amended and restated as

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 2 of 34

follows:[3] "The Debtor may further amend the Plan Supplement, provided such amendment is filed at least two (2) days prior to the Confirmation Hearing."

F.    <u>Notice and Solicitation</u>. On November 20, 2019, the Debtor transmitted the Disclosure Statement, the Plan, the Plan Supplement, the Disclosure Statement Order, ballots for accepting or rejecting the Plan, balloting instructions, and notice of the Confirmation Hearing (collectively the "<u>Solicitation Materials</u>") in accordance with Bankruptcy Rule 3017 and the Disclosure Statement Order. Compliance with the Disclosure Statement Order by service of the Solicitation Materials is evidenced by the certificate of service (Doc. 641) filed by the Debtor on November 20, 2019 and the *Report to Court of Chapter 11 Balloting Results* filed by the Debtor on December 18, 2019 (the "<u>Voting Report</u>") (Doc. 655). Based on the foregoing, due and adequate notice of the Disclosure Statement, the Plan, the Confirmation Hearing, and all deadlines for voting on or filing objections to the Plan have been given to all known holders of Claims or Interests, and no other or further notice is or shall be required. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with §§ 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, and other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. The time between solicitation and the Confirmation Hearing was sufficient to comply with the Bankruptcy Code and Bankruptcy Rules. The Debtor is thus entitled to the protections afforded in § 1125(e) of the Bankruptcy Code

G.    <u>Balloting</u>. The Debtor filed the Summary of Ballots disclosing and certifying the results of the ballot tabulations for the classes of Claims entitled to vote on the Plan. With regard to the classes entitled to vote on the Plan, the Voting Report reflects that, in Class 1, one-hundred percent (100%) of those voting, holding one-hundred percent (100%) of the total amount of the

---

[3] The only change is to modify "seven (7) days" to "two (2) days" in this sentence.

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 3 of 34

Claims voting in such class, voted to accept the Plan. In Class 5, one-hundred percent (100%) of those voting, holding one-hundred percent (100%) of the total amount of the Claims voting in such class, voted to accept the Plan. In Class 6, one-hundred percent (100%) of those voting, holding one-hundred percent (100%) of the total amount of the Claims voting in such class, voted to accept the Plan. In Class 7, one-hundred percent (100%) of those voting, holding one-hundred percent (100%) of the total amount of the Claims voting in such class, voted to accept the Plan.

H.     <u>Plan Supplement</u>. On October 17, 2019, the Debtor filed the Plan Supplement (Doc. 598), as further amended by Docs. 622, 632 and 656, which includes the (i) Plan Support Agreement; (ii) the Double Wheel Parties Settlement Stipulation; (iii) the Forkland Parties Settlement Stipulation; (iv) Compensation of the Debtor's Officers and Board of Managers; (v) Consent of the Alabama State Port Authority to Sublease Between the Debtor and Alabama Farmers Cooperative, Inc., with form of Sublease attached; (vi) the Exit Financing Facility term sheet, and (vii) the proposed Exit Financing Facility Loan Documents. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference within, the Plan. All such materials comply with the Plan (as modified hereby), and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and all other applicable rules, laws and regulations, and no other or further notice is or shall be required. No documents within the Plan Supplement have been materially modified after the filing thereof, and the Debtor is authorized to make further non-material modifications to any of the documents contained in the Plan Supplement in accordance with the Plan and the Bankruptcy Code through and including the Effective Date. To the extent that any pre-confirmation modifications to the Plan Supplement are determined to be

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document      Page 4 of 34

modifications to the Plan subject to Bankruptcy Rule 3019, any such modifications do not (i) constitute material modifications of the Plan under § 1127 of the Bankruptcy Code, (ii) require additional disclosure under § 1125 of the Bankruptcy Code, (iii) cause the Plan to fail to meet the requirements of §§ 1122 or 1123 of the Bankruptcy Code, (iv) materially and adversely change the treatment of any Claims or Interests, (v) require re-solicitation of any holders of Claims or Interests, or (vi) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. In accordance with § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan to the extent, if any, modified by the Plan Supplement, and no holder of a Claim or Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence thereof.

I. <u>Objections to the Plan</u>. Under the Disclosure Statement Order, objections to the Plan were required to be filed by December 18, 2019. No objections to the Plan were filed.

J. <u>Edits and Amendment to the Plan</u>. Consistent with the Bankruptcy Court's ruling on the Debtor's oral motion at the Confirmation Hearing to amend the Plan, Section 2.1.74 of the Plan, providing the definition of Plan Supplement, is amended and restated as follows:[4]

> 2.1.74. "***Plan Supplement***" means, collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of this Plan, including, without limitation, the Plan Support Agreement, the Forkland Parties Settlement Stipulation and the Double Wheel Parties Settlement Stipulation, and all exhibits, attachments, schedules, agreements, documents, and instruments referred to therein, ancillary or otherwise, to be filed with the Bankruptcy Court (i) contemporaneously with this Plan or, (ii) as it may be amended or supplemented, at least two (2) days prior to the Confirmation Hearing, all of which are incorporated by reference into, and are an integral part of, this Plan, and which shall be consistent with this Plan and the Plan Support

---

[4] The only change is to modify "seven (7) days" to "two (2) days" in this definition.

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document      Page 5 of 34

Agreement and otherwise in form and substance reasonably acceptable to the Debtor and the Plan Sponsor.

K.    Injunctions, Exculpations, and Releases as set forth in Section 9 of the Plan. As more fully set forth in the Plan, Sections 9.2 and 9.5 of the Plan provide that this Confirmation Order will, as of the Effective Date, permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any Claims or Interests discharged, modified, or extinguished pursuant to the Plan. As more fully set forth in the Plan, Section 9.3 of the Plan provides that on the Effective Date, the Debtor and the Reorganized Debtor each shall forever waive and release each of the Released Parties of and from any and all Released Claims and Causes of Action. Also, as more fully set forth in the Plan, Section 9.4 of the Plan provides for the exculpation of the Exculpated Parties of and from such Claims and liabilities described therein.

L.    Findings as to the Injunctions, Exculpations, and Releases to be granted to Released Parties. The Bankruptcy Court makes specific findings with regard to the injunctions and the releases to be provided to the Released Parties, i.e., (a) AFC, for itself and as the DIP Lender and Plan Sponsor, and its predecessors in interest, current and former officers, directors, managers, principals members, employees, agents, representatives, affiliates, Interest or equity holders, financial advisors, partners, attorneys, accountants, consultants, and other professionals, each in their capacity as such, and (b) the Debtor's current and former officers, directors, managers, employees, agents, representatives, financial advisors, partners, attorneys, accountants, consultants, and other professionals, each in their capacity as such:

1. Under the Plan, Released Parties AFC, the Plan Sponsor and the DIP Lender (collectively, "AFC") will, upon the Effective Date, make a substantial payment to the Debtor to help fund certain Distributions under the Plan, and contribute other significant benefits and make critical compromises in support of the Plan, all to facilitate the Debtor's reorganization, as set forth more completely in the

Plan Support Agreement in the Plan Supplement. Such agreements and compromises include (i) AFC's agreement not to require payment in full of the DIP Claim on the Effective Date as would otherwise be required; (ii) AFC's consensual refinance of its Class 1 Claim as part of the Exit Facility; (iii) AFC's agreed subordination and impairment of its Class 7 Claim; (iv) AFC's funding of the Processing Rights Redemption Price Pool, the proceeds of which will be used for the payment in full in Cash on the Effective Date of the Allowed Class 4, 5, and 6 Claims; (v) AFC's release of its liens on the DIP Collateral on the Effective Date and consent to the Debtor's use of the DIP Collateral to pay Non-Classified Claims and otherwise make Distributions on Allowed Class 3, 4, 5, and 6 Claims as contemplated by the Plan; and (vi) AFC's execution and delivery of the Feed Mill Sublease to the Reorganized Debtor.

2. The Released Debtor Parties have contributed materially to the Debtor's successful reorganization efforts prior to and during the Bankruptcy Case, providing the service and expertise required for the Debtor to continue to operate, within budget, the Debtor's core businesses and effectuate a smooth transition of the Processing Plant operations to CCP. The Released Debtor Parties negotiated with key constituencies to resolve costly litigation and disputes and permit the proposal of a consensual Plan that ensures all creditors who have not otherwise agreed to deferred or reduced payment are paid in full pursuant to the Plan.

3. The injunctions, exculpations, and releases are integral to, and critical parts of, the Plan and the settlements implemented pursuant to the Plan and the Settlement Stipulations. The approval of such injunctions, exculpations, and releases pursuant to this Confirmation Order is a condition to the occurrence of the Effective Date, and all Released Parties, including the Released Debtor Parties, and Exculpated Parties have relied on the efficacy and conclusive effects of such releases, exculpations, and injunctions, and on the Bankruptcy Court's retention of jurisdiction to enforce such releases, exculpations, and injunctions, in participating in the Bankruptcy Case on behalf of the Debtor, making concessions pursuant to the Plan (including the Settlement Stipulations and Plan Support Agreement incorporated by reference therein), and otherwise agreeing to, accepting, and supporting the settlement and treatment under the Plan of their respective Claims, Interests, Causes of Action, and other rights. The success of the Debtor's reorganization is predicated upon the Released Parties' and Exculpated Parties' contributions during the pendency of this proceeding, and further agreements and compromises (including those set forth in the Plan Support Agreement) that are conditioned upon the injunctions, exculpations, and releases granted to the Released Parties and Exculpated Parties, as applicable.

4. The injunctions, exculpations, and releases in the Plan, in the Plan Support Agreement, and the Settlement Stipulations are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Debtor Parties, and the Exculpated Parties; (b) a good faith settlement and compromise of the Released Claims and Causes of Action; (c) in the best interests

of the Debtor, the Estate, and the holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (f) a bar to the assertion by the Debtor and the Reorganized Debtor, or anyone acting on their behalf, of any Released Claims and Causes of Action against any of the Released Parties, including the Released Debtor Parties, or pursuing the Exculpated Parties in violation of Section 9.4 of the Plan.

M.    <u>Additional Findings Regarding the Plan Support Agreement and the Settlement Stipulations</u>. The Plan constitutes a motion for approval of the Plan Support Agreement and Settlement Stipulations under Bankruptcy Rule 9019. The evidence adduced at the Confirmation Hearing and the record in this Bankruptcy Case establish that the complexity of the Debtor's Bankruptcy Case necessitated a consensual exit strategy. The Debtor and its officers and employees worked diligently and in good faith with the Debtor's key stakeholders to formulate, negotiate, and support a process that was fair and equitable to all parties in interest. The potential for complex and extensive litigation on multiple fronts, including with respect to (a) the lawsuit styled *Double Wheel Ranch, LLC, Thed Spree, Julia Burke Spree v. SouthFresh Aquaculture, LLC, AL, Demopolis Feed Mill*, Case No. CV-2017-900047.00 (the "<u>Double Wheel Litigation</u>") in the Circuit Court of Greene County, Alabama (the "<u>State Court</u>"); (b) the motions for relief from stay filed by the Double Wheel Parties and the Forkland Parties; (c) the AP; (d) the Proofs of Claim and Proofs of Interest filed by the Double Wheel Parties and the Forkland Parties and the Debtor's intent to object thereto; (e) the Debtor's need for continued occupancy and operation of the Feed Mill; (f) the allocation of distributable value among the creditor classes; (g) the Debtor's financial ability to exit this Bankruptcy Case; and (h) the scope of the proposed releases and exculpations under the Plan, led to the Debtor's negotiation and execution of the Plan Support Agreement and the Settlement Stipulations. The litigation of any one of the foregoing issues would have been costly and time consuming, while the outcome would be

uncertain, thereby reducing the Debtor's liquidity and value otherwise available for creditor recoveries. All parties to the Plan Support Agreement and each of the Settlement Stipulations have provided significant consideration thereunder, each as more fully set forth in the Plan Support Agreement, the Settlement Stipulations, and the Plan, which include, without limitation, (i) the Double Wheel Parties' release of all rights, Claims, Interests, or other entitlements that they have or may have against the Debtor, the Estate, and the Released Debtor Parties; (ii) the Double Wheel Parties' dismissal of their claims against the Debtor and its directors and officers in the Greene County Litigation; (iii) a stay of the Double Wheel Stay Relief Motion and AP until the Effective Date, at which time the Double Wheel Stay Relief Motion will be deemed withdrawn and the AP dismissed; (iv) the Forkland Parties' release of all rights, Claims, Interests, or other entitlements that they have or may have against the Debtor, the Estate, and the Released Debtor Parties; (v) the Forkland Parties' consent to the dismissal of the AP as of the Effective Date; (vi) the Plan Sponsor Cash Contribution to facilitate Distributions to holders of Allowed Class 4, 5, and 6 Claims by funding the Processing Rights Redemption Price Pool, the proceeds of which will be used for the payment in full in Cash on the Effective Date of the Allowed Class 4, 5, and 6 Claims based on each Claimant's Processing Rights Redemption Price; (vii) the DIP Lender's release of its liens on the DIP Collateral on the Effective Date and its agreement to allow the Debtor to use the DIP Collateral to pay Non-Classified Claims and otherwise make Distributions on Allowed Class 3, 4, 5, and 6 Claims as contemplated by the Plan; (viii) the DIP Lender's agreement not to require payment of the DIP Claim in full on the Effective Date; (ix) AFC's agreement to refinance the DIP Claim on the Effective Date through the Exit Financing Facility, which AFC will make available to the Debtor on the Effective Date; (x) AFC's subordination of its Allowed Class 7 Claim to all Allowed Class 3, 4, 5, and 6 Claims;

and (xi) AFC's execution and delivery of the Feed Mill Sublease to the Reorganized Debtor. Each component of the Plan Support Agreement and the Settlement Stipulations is an integral, integrated, and inextricably linked part of the Plan that is not severable from the entirety of the global settlement underlying the Plan. The Plan incorporates and implements the settlements and compromises set forth respectively in the Plan Support Agreement and the Settlement Stipulations (including, without limitation, the releases provided pursuant to Section 9.3 of the Plan), which settlements and compromises (A) represent a sound exercise of the Debtor's business judgment; (B) were negotiated in good faith and at arms' length; (C) constitute an essential part of the Plan; (D) were granted in exchange for good and valuable consideration; (E) constitute good faith settlements and compromises of the Claims and Causes of Action released thereby; (F) are in the best interest of the Debtor, its Estate and all holders of Claims and Interests; (G) are fair, equitable, and reasonable under the circumstances of this Bankruptcy Case; and (H) are subject to Court approval after due notice and opportunity for hearing. The Plan Support Agreement and the Settlement Stipulations, and the settlement, compromises, release, and treatment of certain Claims and Interests thereunder, are the culmination of extensive negotiations among the Estate's key stakeholders. The Debtor has met its burden of proving that the Plan Support Agreement, the Settlement Stipulations, and the treatment of Claims and Interests as provided therein, are fair, equitable, reasonable, and in the best interests of the Debtor, the Debtor's Estate, and the Estate's stakeholders in satisfaction of Bankruptcy Rule 9019.

N.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code in satisfaction of § 1129(a)(1) of the Bankruptcy Code, demonstrated as follows:

1. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to administrative Claims, priority tax Claims, and the BA's fees, which need not be classified, the Plan designates nine (9) classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in such Class. Valid business, factual, and/or other legal reasons exist for separately classifying the various Classes of Claims and Interests, and such Classes and the Plan's treatment thereof do not unfairly discriminate between the holders of Claims. The Plan satisfies §§ 1122 and 1123(a)(1) of the Bankruptcy Code.

2. Specification and Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2)) and Treatment of Impaired Classes and Interests (11 U.S.C. § 1123(a)(3)). Sections 3 and 4 of the Plan specify the Claims in such Class as impaired or unimpaired and specify the treatment of impaired and unimpaired Claims, thereby satisfying §§ 1123(a)(2) and (a)(3) of the Bankruptcy Code.

3. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class, thereby satisfying § 1123(a)(4) of the Bankruptcy Code.

4. Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate means for its implementation. The Reorganized Debtor will own and continue operation of the Debtor's remaining business assets, in accordance with and as set forth in the Plan. The agreements and compromises made by AFC (including as Plan Sponsor and DIP Lender) in the Plan Support Agreement and incorporated into the Plan will permit Allowed Claims, other than AFC's Allowed Class 1 and Class 7 Claims and the Allowed Administrative Expense Claims of Retained Professionals who may agree to deferred payment, to be paid in full in Cash in accordance with the terms of the Plan.

5. Non-Funding Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan provides that, pursuant to the Plan Support Agreement and in consideration for the contributions of AFC thereunder, AFC will hold all membership interests in the Reorganized Debtor. The Plan contains no provisions for the issuance of non-voting equity securities, thereby satisfying the requirements of § 1123(a)(6) of the Bankruptcy Code.

6. Compliance with Requirements of Certain Bankruptcy Rules – Bankruptcy Rule 3016(a) and 3016(c). The Plan is dated and identifies the Entity submitting it as the Debtor, thereby satisfying Bankruptcy Rule 3016(a). Other than conduct automatically enjoined by the Bankruptcy Code, the Plan and Disclosure Statement describe in specific and conspicuous language all acts enjoined and identifies the Persons or Entities subject to any injunction or release, thereby satisfying Bankruptcy Rule 3016(c).

7. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. Consistent with § 1123(b) of the Bankruptcy Code, the Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, including provisions for (i) assumption of executory contracts and unexpired leases; (ii) releases of claims and causes of action against various Persons and Entities with respect to certain actions taken in connection with the Plan and Disclosure Statement, and injunctions against certain actions against the Debtor and certain other Persons and Entities; and (iii) the treatment of the rights of holders of Administrative Expense Claims.

O.  <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying §1129(a)(2) of the Bankruptcy Code. Specifically:

1. The Debtor is a proper debtor and proponent of the Plan under §§ 109 and 1121(a) of the Bankruptcy Code, respectively;

2. Except as otherwise provided or permitted by orders of the Bankruptcy Court, the Debtor has complied with applicable provisions of the Bankruptcy Code, including §§ 1125 and 1126, and with applicable provisions of the Bankruptcy Rules, including Bankruptcy Rules 3016, 3017, 3018, and 3019.

3.  The distribution of the Disclosure Statement and the procedures for soliciting and tabulating ballots for acceptance and rejection of the Plan were fair, properly conducted, and in accordance with Bankruptcy Rules 3017 and 3018, § 1126(c) of the Bankruptcy Code, and the Disclosure Statement Order (as modified hereby).

P.  <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor engaged in extensive, arm's-length and good faith negotiations with its key constituencies, which culminated in the Plan Support Agreement, the Settlement Stipulations, and the Plan. The Debtor has proposed the Plan (including the Plan Supplement and all other agreements, documents and instruments necessary to effectuate the Plan) in good faith and not by any means forbidden by law.  The Debtor has acted, and is presently acting, in good faith in conjunction with all aspects of the Plan, thereby satisfying § 1129(a)(3) of the Bankruptcy Code. All transactions contemplated by the Plan were negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy

Court has examined the procedural and evidentiary record of the Bankruptcy Case and the totality of the circumstances surrounding the formulation of the Plan Support Agreement, the Settlement Stipulations, and the Plan; the solicitation of the Plan and the Disclosure Statement and the hearings thereon; and the record of the Confirmation Hearing and other proceedings held in the Bankruptcy Case. Consistent with the overriding purpose of the Bankruptcy Code, the Bankruptcy Case was filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtor and maximizing the value of the Debtor's assets. Moreover, the Plan allows the Debtor to restructure its finances and maintain operations after it emerges from bankruptcy, thereby continuing to provide feed manufacturing and seafood reselling services while providing for payment of the Allowed Claims of its creditors in full.

Q.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying § 1129(a)(4) of the Bankruptcy Code.

R.     Officers, Managers, and Directors (11 U.S.C. § 1129(a)(5)). The Debtor has fully and accurately disclosed the identity and any affiliations of all the individuals proposed to serve as officers, managers, and directors of the Debtor after the Plan is confirmed.

S.     No Rate Changes (11 U.S.C. § 1129(a)(6)). No regulatory commission has any jurisdiction over rates charged by the Debtor, and the Plan does not provide for any rate changes by the Debtor. Thus, Bankruptcy Code § 1129(a)(6) is not applicable to this Bankruptcy Case or to the Plan.

T.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies Bankruptcy Code § 1129(a)(7). The Disclosure Statement, the evidence adduced at the Confirmation Hearing, and the stipulation of AFC announced on the record at the Confirmation Hearing with regard to the Debtor's treatment of AFC's Class 9 Interest are persuasive and credible; are based on reasonable and sound assumptions; and establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, confirmation of the Plan is in the best interests of the Debtor's creditors.

U.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Claims and Interests in Classes 2, 3, and 4 are not impaired under the Plan and the holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code § 1126(f). Claims in Classes 1, 5, 6, and 7 voted to accept the Plan in accordance with Bankruptcy Code § 1126(c) and (d) are accepting Classes with respect to the Plan. As shown by the Voting Report presented to the Bankruptcy Court, the Classes of creditors entitled to vote on the Plan unanimously voted to accept the Plan. Therefore, the Debtor has satisfied § 1129(a)(8) of the Bankruptcy Code.

V.     Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and other Priority Claims pursuant to Section 4 of the Plan satisfies the requirement of § 1129(a)(9) of Bankruptcy Code.

W.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). The Summary of Ballots presented to the Bankruptcy Court shows that the impaired Classes of Claims—Classes 5 and 6—voted to accept the Plan without including any acceptances by an insider. Therefore, at

least one Class of Claims that is impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of § 1129(a)(10) of the Bankruptcy Code.

X.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan provides for Distributions to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. The Disclosure Statement, which includes financial projections for the Reorganized Debtor, and the evidence adduced at the Confirmation Hearing are persuasive and credible, are based on reasonable and sound assumptions, and establish that the Plan is feasible. The Debtor has demonstrated that confirmation is not likely to be followed by liquidation, or the need for further financial reorganization of the Debtor or its successor—the Reorganized Debtor—under the Plan, thus satisfying the requirements of § 1129(a)(11) of the Bankruptcy Code.

Y.    Payment of Fees (11 U.S.C. § 1129(a)(12)). In accordance with § 1129(a)(12) of the Bankruptcy Code, Section 4.1.4 of the Plan provides for payment on the Effective Date of all fees payable under 28 U.S.C. § 1930 .

Z.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). In accordance with § 1129(a)(13) of the Bankruptcy Code, Section 10.7 of the Plan provides for the continuation of all retiree benefits (within the meaning, and subject to the limitations, of § 1114 of the Bankruptcy Code), if any, for the duration of the period for which the Debtor has obligated itself to provide such benefits.

AA.    Satisfaction of Cramdown Requirements (11 U.S.C. § 1129(b)). In accordance with § 1129(b) of the Bankruptcy Code, the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the Plan. Therefore, the Debtor has satisfied § 1129(b) of the Bankruptcy Code.

BB.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and no governmental Entity has filed any objection asserting that such avoidance is the principal purpose of the Plan.

CC.     Implementation of the Plan. Pursuant to 11 U.S.C. § 1142(b), no action of the Debtor's or Reorganized Debtor's respective directors, managers, officers, or members will be required to authorize the Debtor or the Reorganized Debtor, as applicable (i) to effectuate and carry out the Plan or any order of the Bankruptcy Court relating thereto, (ii) to consummate the transactions contemplated by the Plan or such orders, or (iii) to take any other action contemplated by the Plan or such orders entered in connection therewith, and all such actions hereby are deemed taken or done with like effect as if authorized or approved by unanimous actions of such directors, managers, officers, or member.

DD.     Assumption of Executory Contracts and Unexpired Leases other than Processing Rights Contracts (11 U.S.C. §§ 365 and 1123(b)(2)). Pursuant to Section 5.1 of the Plan and this Confirmation Order, the Debtor has exercised sound business judgment in determining to assume on the Effective Date, all executory contracts or unexpired leases of the Debtor (other than Processing Rights Contracts) that are not subject to a pending objection or pleading seeking to reject or otherwise contesting such executory contract or unexpired lease, including without limitation all insurance policies in force as of the Effective Date. Monetary defaults under such executory contracts or unexpired leases, if any, have been cured or will be cured prior to the Effective Date, and the non-Debtor parties to such executory contracts and unexpired leases have received adequate assurance of future performance.  As such, the Plan complies with § 1123(b)(2) of the Bankruptcy Code. The Debtor is not aware that any Processing Rights

Contracts are in existence that have not previously been expressly rejected by the Debtor pursuant to a Final Order. If any such non-rejected Processing Rights Contracts do exist, then such Processing Rights Contracts shall be deemed rejected as of the Effective Date, notwithstanding any other provision of the Plan.

      EE.    <u>Implementation of Other Necessary Documents and Agreements</u>. All documents and agreements necessary or advisable to implement or carry out the Plan, including but not limited to the Plan Support Agreement, the Settlement Stipulations, and the other documents contained in the Plan Supplement are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtor, its Estate, and holders of Claims and Interests, and shall, upon completion of documentation, execution and delivery, be valid, binding, and enforceable in accordance with their respective terms and conditions against the Reorganized Debtor. The Debtor has exercised reasonable business judgment in determining which documents and agreements to enter into and has provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, and are fair and reasonable, and the Debtor's entry into such documents and agreements is hereby approved. The Debtor and the Reorganized Debtor, as applicable, are authorized, without any further notice to or action, order or approval of, the Bankruptcy Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their respective obligations thereunder in accordance with the Plan.

      **BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Confirmation. The Plan filed by the Debtor on November 18, 2019 (Doc. 630), as modified hereby, is CONFIRMED in its entirety pursuant to §1129 of the Bankruptcy Code. The terms of the Plan, as well as the Plan Support Agreement and the Settlement Stipulations that are incorporated by reference therein and that are an integral part of the Plan and this Confirmation Order, are hereby approved. The Debtor has carried its burden of proof by demonstrating its satisfaction of the requirements for confirmation.

2.    Solicitation and Notice. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order (as modified hereby), was appropriate and satisfactory based on the circumstances of the Bankruptcy Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the Bankruptcy Court. The solicitation of votes on the Plan complied with the solicitation procedures in the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Bankruptcy Case, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the Bankruptcy Court.

3.    Omission of Reference to Particular Plan Provisions. The failure to specifically describe or refer to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan, including the Plan Supplement, be approved and confirmed in its entirety.

4.    Plan Classification Controlling. The classifications of Claims for purposes of the Distributions to be made pursuant to the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered or returned in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect,

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 18 of 34

the actual classification of such Claims under the Plan for distribution purposes; and (c) shall not be binding on the Debtor or the holder of any Claim for purposes other than voting on the Plan.

5.   <u>Effect of the Plan</u>. The entry of this Confirmation Order constitutes, *inter alia*, approval pursuant to Bankruptcy Rule 9019 and § 105(a) of the Bankruptcy Code of the global settlement embodied by the Plan (including the Plan Support Agreement and the Settlement Stipulations incorporated by reference therein). If, for any reason, the Effective Date does not occur, the various parties to the Plan Support Agreement and each of the Settlement Stipulations reserve all of their respective rights with respect to any and all disputes that the parties sought to resolve and settle thereunder and under the Plan. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Section 6.1 of the Plan, as of the Effective Date, of each of the compromises and settlements included within the Plan and the Plan Supplement, including, *inter alia,* that (i) AFC will contribute the Plan Sponsor Cash Contribution to fund the Processing Rights Redemption Pool from which Allowed Class 4, 5, and 6 Claims will be paid  in full on the Effective Date; (ii) AFC will agree to refinance its Class 1 DIP Claim through the Exit Financing Facility on the Effective Date; (iii) AFC will subordinate its Class 7 Claim in the amount of $12,609,818.00 to Allowed Claims in Classes 3, 4, 5, and 6 in order to facilitate payment in full of Allowed Claims in Classes 3, 4, 5, and 6 on the Effective Date and exchange the amount of its Class 7 Claim for all of the Reorganized Debtor Membership Interests on the Effective Date; (iv) AFC will execute and deliver the Feed Mill Sublease to the Reorganized Debtor on the Effective Date; (v) the Class 5 Forkland Parties' Rejection Damages Claims are Allowed against the Debtor in the aggregate amount of $295,000.00, with the amount of each of the Allowed Forkland Parties' Rejection Damages Claims specifically described on page 2 of the Forkland Parties Settlement Stipulation, and (vi)

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document      Page 19 of 34

the Class 6 Double Wheel Parties' Rejection Damages Claim is Allowed against the Debtor in the amount of $129,500.00. Furthermore, entry of this Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Section 6.1 of the treatment of Claimants and Interest holders under the Plan, the scope of the releases, exculpations, and injunctions therein, and the Bankruptcy Court's finding that all compromises and settlements included within the Plan are: (i) in the best interest of the Debtor, the Estate, the Reorganized Debtor, and the Estate's stakeholders; and (ii) fair, equitable and within the range of reasonableness. The provisions of the Plan (including Section 6.1 thereof and the terms of the Plan Support Agreement and the Settlement Stipulations incorporated therein) and the Plan's release, injunction, and exculpation provisions, are mutually dependent.

6.     <u>Binding Effect</u>. Upon entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind (a) any holder of a Claim against or Interest in the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan, (b) the non-Debtor party or parties to each executory contract and unexpired lease assumed under the terms of the Plan as approved herein, (c) all parties to the Plan Support Agreement and Settlement Stipulations, (d) every other party in interest in the Bankruptcy Case, and (e) all parties having notice of the Bankruptcy Case or receiving or retaining property under the Plan, and their respective heirs, executors, administrators, successors, or assigns.

7.     <u>Company Existence</u>. The Reorganized Debtor shall continue to exist after the Effective Date as a corporation with all the rights and privileges such Entities are granted under the laws of the state of Alabama.

8.      <u>Vesting of Assets</u>. Except as otherwise provided in the Plan and this Confirmation Order, all property and assets of the Debtor shall be retained by the Reorganized Debtor in accordance with the terms of the Plan, free and clear of all Claims, Interests, liens, encumbrances, charges and other interests. To the extent any unrecorded liens against or ownership interests (including, without limitation, tenancy in common interests) in any such assets exist or are asserted by third parties, such liens and interests shall be voided as of the Effective Date. Commencing on the Effective Date, the Reorganized Debtor may deal with its assets and its property and conduct its business without any supervision by, or permission from, the Bankruptcy Court or the BA, free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan or this Confirmation Order.

9.      <u>Ownership and Control</u>. The consummation of the Plan shall not, unless the Debtor or the Reorganized Debtor expressly agrees in writing, constitute a change of ownership or transfer of control as such terms are used in any statute, regulation, contract or agreement (including, but not limited to, any agreements assumed by the Debtor pursuant to the Plan) in effect on the Effective Date and to which the Debtor is a party.

10.      <u>Distributions Under the Plan</u>. All Distributions pursuant to the Plan shall be made in accordance with the Plan either by the Debtor or by the Reorganized Debtor. Because of AFC's consensual refinance of its Class 1 Claim rather than requiring that it be paid in full on the Effective Date, and AFC's subordination and impairment of its Class 7 Claim, all Allowed Claims will be paid in full in Cash on the Effective Date, other than (i) AFC's Allowed Class 1 and Class 7 Claims, and (ii) the Allowed Administrative Expense Claims of Retained Professionals who have agreed to defer payment.

11.    <u>Allowance of Claims and Interests</u>. The provisions of Section 7 of the Plan, including without limitation, the provisions governing procedures for resolving Disputed Claims and Interests, are fair and reasonable and are approved.

12.    <u>Approval of Assumption of Executory Contracts and Leases</u>. Pursuant to Section 5.1 of the Plan, all executory contracts and unexpired leases of the Reorganized Debtor, other than Processing Rights Contracts, not subject to a pending objection or pleading seeking to reject or otherwise contesting such executory contract or unexpired lease, including without limitation all insurance policies in force as of the Effective Date, shall be assumed as of the Effective Date. Entry of this Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to §§ 365(a) and 1123 of the Bankruptcy Code, of the assumption of each executory contract and unexpired lease pursuant to Section 5.1 of the Plan.

13.    <u>Approval of Rejection of Processing Rights Contracts Not Already Rejected</u>. Pursuant to Section 5.1 of the Plan, any Processing Rights Contracts in existence that have not been expressly rejected by the Debtor pursuant to a Final Order shall be rejected as of the Effective Date. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to §§ 365(a) and 1123 of the Bankruptcy Code, of the rejection of such Processing Rights Contracts pursuant to Section 5.1 of the Plan. **All claims for damages arising from the Debtor's rejection of any Processing Rights Contracts not previously rejected (if any) must be filed no later than thirty (30) days after the Effective Date and shall constitute General Unsecured Claims. Any Entity or Person that is required to file a Claim arising from the rejection of a Processing Rights Contract pursuant to this paragraph that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Debtor, the Reorganized Debtor, the Estate,**

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 22 of 34

**or the Debtor's property, and the Debtor, the Reorganized Debtor, and its Estate shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 9.5 of the Plan.**

14.     <u>Causes of Action</u>. On the Effective Date without further action by any party, all Causes of Action (other than the Released Causes of Action), and all defenses, counterclaims, setoffs, and rights related thereto, including all privileges, shall be, and shall be deemed, fully vested in the Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor shall have the exclusive right to prosecute, settle, compromise or assign any Cause of Action (other than the Released Causes of Action) in its reasonable discretion.

15.     <u>Discharge</u>. Pursuant to §§ 524 and 1141(d), and except as otherwise specifically provided in the Plan or this Confirmation Order, as of the Effective Date, confirmation shall discharge and release the Debtor and its Estate, and all property of the Debtor, from any and all Claims, debts, liens, security interests, encumbrances and Interests that arose before the confirmation date including, but not limited to, all principal and any interest accrued thereon, and all liabilities in respect thereof shall be extinguished completely.

16.     <u>Injunction</u>. Except as otherwise expressly provided in the Plan or for Distributions required to be paid or delivered pursuant to the Plan or this Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests or Causes of Action against the Debtor or the Released Debtor Parties that have been released pursuant to the Plan (including, without limitation, pursuant to the Settlement Stipulations attached to the Plan and incorporated by reference therein), or that shall be discharged pursuant to the Plan, or that are subject to exculpation pursuant to Section 9.4 of the Plan, are permanently enjoined, from and after the

Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Debtor Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 9.4 of the Plan): (i) commencing or continuing in any manner any action or other proceeding, or pursuing any legal or equitable remedy, of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order received or held on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Debtor, the Reorganized Debtor, the Released Debtor Parties, or the Exculpated Parties or their respective property on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (iv) asserting any right of setoff, subrogation, or recoupment of any kind pursuant to applicable law or otherwise against any obligation due from the Debtor, the Reorganized Debtor, the Released Debtor Parties, or the Exculpated Parties, or against their respective property, on account of or in connection with or with respect to any such Claims or Interests or Causes of Action unless such Person or Entity has timely asserted such setoff right in a document properly filed with the Bankruptcy Court, and the Bankruptcy Court has entered a Final Order explicitly preserving such setoff right; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action released, discharged, or settled pursuant to the Plan or the Settlement Stipulations. Any act in violation of this injunction shall be void. Each of the Reorganized Debtor, the Released Debtor Parties, and the Exculpated Parties, as applicable, shall be entitled to costs, including reasonable attorneys' fees and expenses, for any action necessary to enforce

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 24 of 34

this injunction or obtain any other legal or equitable relief available as a result of such violation. Notwithstanding anything to the contrary, the foregoing injunction shall not impede or impair enforcement of the terms of the Plan against the Reorganized Debtor.

17. <u>Terms of Injunction</u>. Unless otherwise provided in this Confirmation Order, all injunctions or stays provided in the Bankruptcy Case under §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the entry of this Confirmation Order, shall remain in full force and effect until the Effective Date.

18. <u>Exculpation</u>. From and after the Effective Date, the Exculpated Parties will neither have nor incur any liability to any Person or Entity for the formulation, preparation, dissemination, implementation, administration, Confirmation, or consummation of the Plan, the Disclosure Statement, the CCP Lease, the Feed Mill Sublease, the DIP Financing Facility, the Exit Financing Facility, the Plan Support Agreement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Bankruptcy Case or the Plan, or any other act taken or omitted to be taken in connection with the Bankruptcy Case; provided, however, that the foregoing will have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

19. <u>Release of Released Parties</u>. Pursuant to § 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and for good and valuable consideration provided by the Released Parties (including the compromises, settlements, and accommodations made by AFC, for itself and as the DIP Lender and Plan Sponsor, that are implemented by the Plan), on and after the Effective Date, the Debtor and the Reorganized Debtor each forever waive and release each of the Released Parties of and from any and all Released Claims and Causes of Action.

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 25 of 34

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any Person or Entity under the Plan, the CCP Lease, the Exit Financing Facility, the Plan Support Agreement, the Feed Mill Sublease, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of this Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases in the Plan, the Plan Support Agreement, and the Settlement Stipulations, which include by reference each of the related provisions and definitions contained in the Plan, and further, will constitute the Bankruptcy Court's finding that the releases in the Plan, the Plan Support Agreement, and the Settlement Stipulations are: (a) in exchange for good and valuable consideration provided by the Released Parties, including the Released Debtor Parties; (b) a good faith settlement and compromise of the Released Claims and Causes of Action; (c) in the best interests of the Debtor, the Estate, and the holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (f) a bar to the assertion by the Debtor or the Reorganized Debtor, or anyone acting on their behalf, of any of the Released Claims and Causes of Action against any of the Released Parties, including the Released Debtor Parties.

20. <u>Exit Financing Facility</u>. On the Effective Date, the Reorganized Debtor shall be authorized to execute and deliver the Exit Financing Facility Loan Documents. All such documents (including the exhibits and schedules thereto) are part of the Plan Supplement and are incorporated in the Plan and this Confirmation Order by reference, and shall become effective in accordance with their terms. The financial accommodations extended under the Exit Financing Facility Loan Documents are being extended in good faith and for legitimate business purposes

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 26 of 34

and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

21.    <u>Security Interests under Exit Financing Facility</u>. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Facility Documents (a) shall be deemed to be validly granted, (b) shall be legal, binding, and enforceable liens on and security interests in the collateral specified therein in accordance with the terms of the Exit Financing Facility Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Debtor, the Reorganized Debtor, or AFC), having the priority set forth in the Exit Financing Facility Documents, and (d) shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law and shall not be subject to avoidance, recharacterization, or subordination (contractual, equitable, or otherwise) for any purposes whatsoever.

22.    <u>Filings Related to Exit Financing Facility</u>. The Debtor, the Reorganized Debtor, and AFC are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect the liens and security interests provided under the Exit Financing Facility Documents pursuant to the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter

cooperate to make any other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

23. <u>The Feed Mill Sublease</u>. On the Effective Date, the Reorganized Debtor shall be authorized to execute and deliver the Feed Mill Sublease. On the Effective Date, AFC shall execute and deliver the Feed Mill Sublease, to which the ASPA has consented in a signed writing, to the Reorganized Debtor. AFC's agreement to execute and deliver the Feed Mill Sublease is expressly subject to Confirmation of the Plan, and AFC has not agreed to execute and deliver the Feed Mill Sublease to the Debtor or the Reorganized Debtor, or to allow the Debtor or the Reorganized Debtor continued access to, or rights to occupy and operate, the Feed Mill under any other terms, conditions, or circumstances.

24. <u>Issuance of the Reorganized Debtor Membership Interests</u>. On the Effective Date, the Reorganized Debtor shall be authorized to issue the Reorganized Debtor Membership Interests and make a Distribution to AFC of all of the Reorganized Debtor Membership Interests in full and final satisfaction, settlement, release, and discharge of, and in exchange for, AFC's Allowed Class 7 Claim.

25. <u>Filing and Recording</u>. This Confirmation Order is, and shall be, binding upon and shall govern the acts of all Persons or Entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

26. <u>Effectuating Documents and Further Transactions</u>. On or before the Effective Date, and without the need for any further order or authority, the Debtor shall execute such agreements and other documents that are in form and substance satisfactory to it as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. As of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

27. <u>Company Action</u>. All matters provided for under the Plan that would otherwise require approval of the board of managers of the Debtor shall be in effect from and after the Effective Date pursuant to the applicable law of the state of Alabama, without any requirement of further action by the officers, managers, or directors of the Debtor.

28. <u>Withholding and Reporting Requirements</u>. Any party making any Distribution under the Plan, including anyone acting on behalf of the Reorganized Debtor, shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or taxing authority, as to all Distributions under the Plan that are subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtor and its agents and professionals shall have no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document      Page 29 of 34

29.     Modification. Pursuant to Section 12 of the Plan, the Debtor shall have the right to modify the Plan as authorized by § 1127 of the Bankruptcy Code. Any modifications made prior to the Effective Date are hereby found to have been technical adjustments and modifications to the Plan that required no order or approval of the Bankruptcy Court, because such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests, or the affected holders of Claims or Interests have consented to such alteration or modification.

30.     Payment of Statutory Fees and Filing of Post-Confirmation Reports. The Debtor shall continue to timely pay to the BA all quarterly fees incurred by the Debtor or the Reorganized Debtor pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Case is closed. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the BA a financial report for each quarter, or portion thereof, for which the Bankruptcy Case remains open in a format prescribed and provided by the BA. Pursuant to the Chapter 11 Operating Order entered in the Bankruptcy Case (Doc. 48), the Debtor shall file all required Post-Confirmation Reports.

31.     Professional Fee Claims. **Retained Professionals shall file final fee applications seeking approval of all fees and expenses from the Petition Date through the Effective Date (each, a "Fee Claim") no later than sixty (60) days after the Effective Date.** To the extent that the holder of such a Fee Claim has not previously been paid, the holder shall receive from the Reorganized Debtor on account of such Fee Claim cash equal to the approved amount of such Fee Claim on or after the later of the Effective Date or ten (10) days after the entry of an order approving the Fee Claim. Any Fee Claim of a Retained Professional shall be paid on a final basis in the ordinary course of business after the Bankruptcy Court has entered an order

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document      Page 30 of 34

approving the final Fee Claim, subject to any payment agreement between the parties. Professionals employed by the Reorganized Debtor may be paid in the ordinary course and need not submit fee applications with respect to services performed after entry of this Confirmation Order.

32.     <u>Retention of Jurisdiction</u>. Pursuant to Section 11 of the Plan, the Bankruptcy Court shall have and retain jurisdiction over the Bankruptcy Case for all purposes provided by the Bankruptcy Code, including but not limited to the following: (i) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases, if any are pending on the Effective Date and not otherwise determined by this Confirmation Order, and the allowance of Claims resulting therefrom; (ii) to determine any and all objections to the allowance of Claims or Interests and to allow, disallow, estimate, liquidate, or determine any Claim or Interest; (iii) to determine any and all applications for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan which accrued on or prior to the Confirmation Date; (iv) to determine any and all applications, adversary proceedings and contested or litigated matters (a) that may be pending on the Effective Date, except as provided in this Confirmation Order, or (b) which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court; (v) to consider any modifications of the Plan, any defect or omission in the Plan, or reconcile any inconsistency in any order of the Bankruptcy Court, including this Confirmation Order, to the extent authorized by the Bankruptcy Code; (vi) to implement the provisions of the Plan and to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code; (vii) to hear and determine disputes arising in connection with the

Case 19-70152-JHH11    Doc 669    Filed 12/23/19    Entered 12/23/19 10:53:33    Desc
Main Document    Page 31 of 34

interpretation, implementation or enforcement of the Plan; and (viii) to enter a Final Decree and orders reopening the Bankruptcy Case, as appropriate.

33. <u>Notice of Entry of Confirmation Order</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtor shall file and serve a notice of entry of this Confirmation Order (the "<u>Notice of Confirmation Order</u>") on all holders of Claims and Interests, the BA, and other parties in interest, by causing the Notice of Confirmation Order to be delivered to such parties by first class mail, postage prepaid, within ten (10) Business Days after entry of this Confirmation Order. The Debtor shall file proof of such service in the Bankruptcy Case. Such notice is adequate under the particular circumstances, and no other or further notice is necessary. Further, copies of this Confirmation Order may be obtained at no cost by written request to Ryan Thompson, attorney for the Debtor (email: rthompson@maynardcooper.com; mailing address: Ryan Thompson, Maynard, Cooper & Gale, P.C., 1901 Sixth Avenue North, 2400 Regions/Harbert Plaza, Birmingham, AL 35203).

34. <u>Notice of the Effective Date</u>. No later than three (3) business days after the occurrence of the Effective Date, the Debtor shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice pursuant to the Bankruptcy Rules.

35. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under §§ 1101 and 1127(b) of the Bankruptcy Code.

36. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Alabama without giving effect to its principles of conflict of laws.

37. <u>Conflicts Between Order and Plan</u>. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

38. <u>Final Order</u>. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence upon the entry hereof. As no objections to confirmation of the Plan were filed, this Confirmation Order shall not be stayed pursuant to Bankruptcy Rule 3020(e).

Dated: December 23, 2019.

/s/ JENNIFER H. HENDERSON
UNITED STATES BANKRUPTCY JUDGE

Order Prepared By:

*/s/ Ryan D. Thompson*
Ryan D. Thompson

*Counsel to the Debtor*

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
J. Leland Murphree
Jayna P. Lamar

Wes Bulgarella
1901 Sixth Avenue North,
2400 Regions/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000
lmurphree@maynardcooper.com
jlamar@maynardcooper.com
rthompson@maynardcooper.com
wbulgarella@maynardcooper.com

*and*

**MAYNARD, COOPER & GALE, P.C.**
Evan N. Parrott
11 North Water Street
RSA Battle House Tower
Suite 24290
Mobile, AL 36602
(251) 432-0001
eparrott@maynardcooper.com